UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| In re:<br><br>BENJAMIN C. JACKSON<br><br>Debtor | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Chapter 7<br>Case No. 15-14350-MSH |
| JACQUELINE N. DA SILVA<br><br>Plaintiff<br><br>v.<br><br>BENJAMIN C. JACKSON<br><br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Adversary Proceeding<br>No. 16-01030 |

**MEMORANDUM OF DECISION**

The plaintiff in this adversary proceeding, Jacqueline da Silva, a creditor of Benjamin Jackson, the defendant here and the debtor in the main chapter 7 case, filed a two-count complaint seeking a judgment denying Mr. Jackson a discharge under Bankruptcy Code 727.[1] In her first count Ms. da Silva claims Mr. Jackson's discharge should be denied under Code § 727(a)(3) because he failed to keep or preserve books and records from which his financial condition might be ascertained. This I will refer to as her books and records objection. In her second count she seeks denial of Mr. Jackson's discharge under Code § 727(a)(4) because he knowingly and fraudulently declared under penalty of perjury that his schedules of assets and

---

[1] All references to the Bankruptcy Code or Code refer to title 11 of the United States Code, 11 U.S.C. 101 *et seq.*

1

liabilities and income and expenses filed in support of his chapter 7 petition were true and correct when they were not. In shorthand, her false oath objection.

In her books and records objection, Ms. da Silva complains that Mr. Jackson failed to keep records of his cash transactions, specifically, details of cash withdrawals in 2015 from his accounts at Bank of America and American Airlines Federal Credit Union. She also complains that he failed to retain records of his expenditures for food, housekeeping supplies, clothing, laundry, dry cleaning, and transportation as claimed in his Schedule J (Expenses).[2]

As grounds for her false oath objection, Ms. da Silva points to the following errors in Mr. Jackson's schedules: (a) his failure in Schedule I (Income) to include on line 3 an amount for monthly overtime pay, even though Mr. Jackson regularly earned such pay; (b) his declaration in Schedule I on line 5e that $634 was deducted monthly from his wages for insurance (which Mr. Jackson had testified at a Rule 2004 examination was for medical insurance only) when his paystubs indicated a monthly deduction of $561.71 for medical *and* life insurance; (c) his listing in Schedule J (Expenses) on line 16 of $250 per month for an income tax payment plan when no such payment plan existed and no such payment was being made; (d) his listing in Schedule J on line 17a of a monthly car payment of $507, when Mr. Jackson testified during the Rule 2004 examination that he was not actually making his car payments as of the date he filed his bankruptcy petition; (e) his listing in Schedule J of monthly expenses for food and housekeeping

---

[2] There is also the matter of Mr. Jackson's bank statements and paystubs for the year prior to his bankruptcy filing. In her complaint, Ms. da Silva alleges that Mr. Jackson failed to keep his bank statements and paystubs for the eleven months preceding his bankruptcy filing, which Mr. Jackson denies in his answer. During the pre-trial stage of this adversary proceeding, Ms. da Silva obtained a complete set of bank statements and paystubs by subpoena from Mr. Jackson's banks and employer after Mr. Jackson failed to produce them, but Mr. Jackson contends that he produced copies at a later date. Ms. da Silva has not disputed Mr. Jackson's contention and instead appears to be claiming that Mr. Jackson's production was incomplete. Ms. da Silva has not, however, presented evidence as to the nature and extent of any insufficiency.

supplies, clothing, laundry and dry cleaning, personal care products, and transportation, all of which Ms. da Silva claims were inaccurate based on the same items being listed in lower amounts in the Schedule J filed on August 27, 2014 in Mr. Jackson's prior chapter 13 case and based on his failure to supply any records to support the amounts of these items; and (f) as a result of all of the foregoing, Mr. Jackson's misstatements of the totals for income and expenses at the end of Schedules I and J.[3]

Ms. da Silva also raises a claim that straddles both her counts: that the court's dismissal of Mr. Jackson's prior chapter 13 case as a bad faith filing due to inaccuracies in his schedules should be treated as having put him on heightened notice of the need to accurately complete his schedules and retain the necessary supporting records in his subsequent chapter 7 case.

Mr. Jackson either disputes Ms. da Silva's assertions altogether or pleads justification and lack of materiality for the complained-of conduct.

A trial in this proceeding took place on March 29, 2017. Having reviewed the evidentiary record, the parties' pre and post-trial submissions and the pleadings in this proceeding, in Mr. Jackson's main case, and in his prior chapter 13 case,[4] I now set forth my findings of fact and rulings of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure in this core proceeding arising in Mr. Jackson's bankruptcy case.[5]

---

[3] Ms. da Silva also alleges in her complaint that Mr. Jackson made a false oath with respect to his Schedules D, E and F due to a failure to correctly reflect his indebtedness to state and federal taxing authorities. These allegations were not supported by any evidence at trial, so Ms. da Silva has failed to carry her burden with respect to them.

[4] A court may take judicial notice of its own dockets. *See LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999).

[5] This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and § 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J) which may be determined by final order. Venue is appropriate pursuant to 28 U.S.C. § 1409.

Mr. Jackson has worked as a ground transportation agent for the Massachusetts Port Authority for about 17 years, primarily as a taxi dispatcher at Logan Airport. At the time of his bankruptcy filing and at all relevant times prior thereto, he was paid $31.55 per hour, which for a forty-hour work week would yield about $5,425 in gross monthly income. For overtime work Mr. Jackson received $47.32 per hour. He regularly worked overtime. For the ten months from January through October, 2015, Mr. Jackson had total gross earnings of $67,996 or, on average, $6,799 per month. After all deductions, Mr. Jackson's take-home pay during this period totaled $22,290 or, on average, $2,229 per month.

On November 7, 2013, Mr. Jackson filed a petition for relief under chapter 13 of the Code in this court. The court dismissed his chapter 13 case upon motion by Ms. da Silva and after a hearing on January 17, 2015.  The transcript of that hearing, introduced into evidence at the trial in this proceeding, reflects that the order of dismissal was based on the court's finding that by setting forth incorrect amounts for income and expenses in his Schedules I and J, Mr. Jackson failed to satisfy the good faith test in chapter 13.

Mr. Jackson returned to this court on November 8, 2015, by filing a chapter 7 petition that initiated the main case in which this adversary proceeding arises. In support of his petition Mr. Jackson filed schedules of assets, liabilities, income, and expenses. Schedules I and J require a debtor to provide, respectively, detailed estimates of his income and expenses as of the bankruptcy filing date. In Schedule I, line 2, Mr. Jackson listed $7,003 in gross monthly wages, on line 3 he listed $0 in overtime pay, and on line 5e he listed $634 in monthly deductions from his wages for insurance. After listing a series of other payroll deductions, including a hefty domestic support payment, he calculated his total monthly take-home pay on line 7 as $3,326.

4

In his Schedule J, Mr. Jackson set forth on line 16 a monthly expense of $250 for an "Income Tax Payment Plan" and on line 17a a $507 monthly expense for installment car payments. In addition, among other monthly expense items, he listed amounts for food and housekeeping supplies, clothing, laundry and dry cleaning, personal care products and services and transportation on lines 7, 9, 10 and 12, respectively. Finally, in response to the question on line 24 of Schedule J asking whether the debtor expected an increase or decrease in his or her expenses within the year after filing the form, Mr. Jackson wrote, "Debtor is hoping to modify his auto loan payment and enter into payment plan with his IRS debt and anticaptes the following expenses in the next year" [multi-sic].

On January 29, 2016, Ms. da Silva conducted an examination of Mr. Jackson in the main case pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure. At the examination, Mr. Jackson testified that the $634 payroll deduction he listed on line 5e of his Schedule I for insurance was for medical insurance.

At the trial in this adversary proceeding, Mr. Jackson testified credibly, and I find, that the $7,003 figure he set forth for gross pay in Schedule I, line 2 included his overtime pay. I also find that the evidence at trial established that the $634 amount set forth in Schedule I, line 5e was intended to include all insurance being deducted from Mr. Jackson's pay, including health insurance, optional insurance, dental insurance, dependent life insurance, and long-term disability insurance.

With regard to his Schedule J, Mr. Jackson testified credibly at trial, and I find, that as of November 8, 2015, the date he filed his schedules, though he was paying neither the $250 listed on line 16 as an "Income Tax Payment Plan" nor the $507 listed on line 17a as a car payment

5

expense, he included these amounts because he anticipated those payments would begin within the year, as he indicated in his response to the question on line 24.

In regards to the discrepancies between his chapter 7 schedules and those filed in his prior unsuccessful chapter 13 case, Mr. Jackson conceded at trial that various items in his chapter 13 schedules, including amounts for personal expenses, were inaccurate. He also testified credibly, however, and I find, that the expense amounts for food and housekeeping supplies, clothing, laundry and dry cleaning, personal care products and services and transportation listed in his chapter 7 Schedule J were reasonable estimates for these expense items.

In addition, Mr. Jackson testified credibly, and I find, that it was his regular practice to pay his expenses in cash, that substantially all of his monthly deposits into his Bank of America and American Airline Credit Union accounts were from his wages, and that his cash withdrawals from those accounts were to pay his living expenses. He also testified credibly, and I find, that it was not his practice to retain the receipts for his cash payments, but that the expense amounts listed in Schedule J were reasonable estimates.

As previously noted, Ms. da Silva seeks denial of Mr. Jackson's discharge based on her books and records objection under Code § 727(a)(3) and her false oath objection under § 727(a)(4).

With respect to her books and records objection, the statute provides that a debtor will be denied a discharge if he "has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." Bankruptcy Code § 727(a)(3). "There are no per se rules for the adequacy of records." *Northeast Community Bank*

6

*v. Manfredonia (In re Manfredonia)*, 561 B.R. 1, 18 (Bankr. D. Mass. 2016). In fact, "[s]ection 727(a)(3) does not require completeness in a debtors records, but it does require sufficient records so that the creditors and the trustee can accurately ascertain the debtor's financial condition." *Id.* (citing *Caneva v. Sun Communities Operating Ltd. (In re Caneva)*, 550 F.3d 755, 761 (9th Cir. 2008)). Nevertheless, "[s]ophisticated business persons are generally held to a higher level of accountability for record keeping than less experienced debtors." *Id.* (citing *Meridian Bank v. Alten*, 958 F.2d 1226, 1231 (3d Cir. 1992)).

Under § 727(a)(3), the initial burden of proof is on the party seeking the denial of discharge "to prove two things: (i) that the debtor 'concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information'; and (ii) that the recorded information was information 'from which the debtor's financial condition or business transactions might be ascertained.'" *Lassman v. Keefe (In re Keefe)*, 380 B.R. 116, 120 (Bankr. D. Mass. 2007). If the burden of proof is met, it shifts to the debtor to prove that "such act or failure to act was justified under all of the circumstances of the case." *Lassman v. Hegarty (In re Hegarty)*, 400 B.R. 332, 342 (Bankr. D. Mass. 2008). Ms. da Silva has not carried her burden of proof in regards to her books and records objection.

Mr. Jackson is a taxi dispatcher at Logan Airport whose take home pay, even with overtime, amounted to about $2,200 per month during the ten months pre-petition. Annualized this would equal about $26,500. He estimated, for purposes of Schedule I, net income of about $3,300 per month or about $40,000 per year. Based on his Schedule J, his bank statements and his trial testimony, he spends this income on living expenses each month. In other words, like many Americans, he lives paycheck-to-paycheck.

That prior to his bankruptcy filing it was Mr. Jackson's regular practice to pay cash for most of his expenses and not to retain the receipts is unremarkable. Nothing in the record of this proceeding even hints that Mr. Jackson has concealed assets or sources of income or has been hoarding or hiding cash—the kinds of activities that Code § 727(a)(3) is intended to ferret out and redress. *See In re Simmons*, 513 B.R. 161, 168 (Bankr. D. Mass. 2014) (quoting *Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir. 1997) in categorizing § 727(a)(3) as one of the "certain sections of the law" for which "the very purpose . . . is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs"). Mr. Jackson's bank statements introduced into evidence show modest monthly income derived entirely from his MassPort wages and many small-dollar cash withdrawals, almost all $200 or less and none greater than $400.[6] This activity is not indicative of the conduct that § 727(a)(3) was intended to discourage.

Furthermore, the standard for disclosure of records for purposes of § 727(a)(3) is one of "reasonableness in the particular circumstances." *Razzaboni v. Schifano (In re Schifano)*, 378 F.3d 60, 68 (1st Cir. 2004) (quoting *Meridian Bank*, 958 F.2d at 1230). I find that Mr. Jackson's level of record keeping is reasonable under the circumstances.

As for Ms. da Silva's false oath objection, the Code provides for the denial of a discharge if a debtor "knowingly and fraudulently, in or in connection with the case—made a false oath or account." Bankruptcy Code § 727(a)(4)(A). The burden of proof is on the party seeking discharge denial under § 727(a)(4) "to demonstrate by a preponderance of the evidence that the

---

[6] While Ms. da Silva alleged in her complaint that Mr. Jackson failed to keep bank statements and paystubs, she has not carried her burden to prove this allegation. While the record is not entirely clear as to the extent to which Mr. Jackson maintained his bank statements and paystubs, he appears to have done so and provided copies to Ms. da Silva, albeit after she had obtained copies from third parties.

debtor (1) knowingly and fraudulently, (2) made a false oath in or in connection with the case, (3) relating to a material fact." *Nickless v. Fontaine (In re Fontaine)*, 467 B.R. 267, 271 (Bankr. D. Mass. 2012).

The first two elements, that a debtor knowingly and fraudulently made a false oath, will be met "if a debtor 'knows the truth and nonetheless willfully and intentionally swears to what is false.'" *JPMorgan Chase Bank v. Koss (In re Koss)*, 403 B.R. 191, 213 (Bankr. D. Mass. 2009) (quoting *Gordon v. Mukerjee (In re Mukerjee)*, 98 B.R. 627, 629 (Bankr. D. N.H. 1989)). Furthermore, the level of the debtor's sophistication is appropriate in determining fraudulent intent. *Id.*

In regards to the materiality element of the § 727(a)(4)(A) analysis, a fact is material if it "has a non-trivial effect upon the estate and creditors." *Fontaine*, 467 B.R. at 272. "The subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it 'bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings or the existence and disposition of property.'" *Premier Capital LLC v. Crawford (In re Crawford)*, 531 B.R. 275, 307 (Bankr. D. Mass. 2015) (quoting *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 111 (1st Cir. 1987)).

Ms. da Silva has not carried her burden to show that Mr. Jackson knowingly and fraudulently made a false oath when he swore to the accuracy of his schedules or testified at his Rule 2004 examination. There is no evidence that Mr. Jackson willfully and intentionally swore to false statements. On the contrary, he testified at trial, and I have found, that the numbers he included on his schedules were accurate estimates. The fact that he combined his regular and overtime pay into a single line item in Schedule I and listed zero on the line for overtime pay is an immaterial error, as were his failure to identify all the types of insurance for which premiums

9

were being deducted from his wages and his Rule 2004 testimony that this deduction was for medical insurance only. None of these errors affects the estate or creditors, nor do any of them concern the discovery of assets, business dealings, or property. *See Crawford*, 531 B.R. at 306. Based on Mr. Jackson's paystubs, the scheduled amount of the deduction for insurance was substantially accurate and that's what counts. *See Koss*, 403 B.R. at 212 ("The 'requirement of an honest, conscious effort to prepare accurate, detailed and complete Schedules is not intended as a trap for the unwary or undue emphasis on technical compliance, but, rather, as a reasonable quid pro quo'" [sic]) (quoting *Guardia Industr. Products v. Diodati (In re Diodati)*, 9 B.R. 804, 809 (Bankr. D. Mass. 1981)).

Arguably, Mr. Jackson's most serious misstep was listing in Schedule J monthly expenses of $250 for a tax payment and $507 for a car payment when he was not actually making those payments and, in fact, had not yet entered into a payment plan with a taxing authority. I find, however, that his disclosure on the last line of Schedule J, unartfully drafted as it was, served to put his creditors on notice that he anticipated incurring these expenses during the year following his bankruptcy filing and that this disclosure overcomes any claim of a knowing and fraudulent false oath with respect to these items.

Finally, the fact that the personal expense amounts listed by Mr. Jackson in his Schedule J filed in his prior chapter 13 case are inconsistent with those in his Schedule J in his current case proves nothing in relation to § 727(a)(4). Mr. Jackson has conceded that his chapter 13 Schedule J contained inaccuracies. Indeed, that appears to be in part why that case was dismissed. However, he testified credibly at trial that the amounts listed for personal expenses in his Schedule J in his current case were accurate estimates, and I have so found.

Ms. da Silva also raises the creative argument that because Mr. Jackson's prior case was dismissed for failure to file accurate schedules, he was put on notice of the importance of doing so and, in effect, should be held to a higher standard than the garden-variety, first-time bankruptcy filer. In other words, Mr. Jackson should have filed schedules that were perfect and perfectly supported by backup documentation. Had Mr. Jackson stood pat and refiled the same inaccurate schedules in his chapter 7 case as he filed in his dismissed chapter 13 case, Ms. da Silva's argument might have carried the day. He did not, however, and he testified credibly at trial that in his chapter 7 schedules he attempted to correct the errors that resulted in dismissal of his prior case. Furthermore, Mr. Jackson's failure to retain receipts for his cash expenditures was never raised by the court in its ruling dismissing the prior case, so Ms. da Silva is incorrect in claiming that Mr. Jackson was placed on notice of the need to start retaining those records even though it had not been his regular practice to do so. Perhaps if he had known he would be filing a second bankruptcy petition, Mr. Jackson, anticipating another onslaught by Ms. da Silva, should have started collecting his receipts as a pre-emptive measure. Mr. Jackson's lack of foresight in this regard, however, does not justify the penalty Ms. da Silva would have me impose on him.

Based on the foregoing, I will enter judgment in favor of Mr. Jackson on both counts of Ms. da Silva's complaint. A separate order shall enter.

Dated at Boston, Massachusetts this 15th day of November, 2017.

By the Court

Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel Appearing: Peter Cole
The Law Office of Peter Cole
Boston, MA
for Jacqueline N. da Silva

Logan A. Weinkauf
Benner & Weinkauf, PC
Boston, MA
for Benjamin C. Jackson